# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

**MARTIN PORTER and LINDA PORTER,
individually and on behalf of a class of
similarly situated individuals,**

**and**

**MARK BROWNSBERGER as the personal
representative of the Estate of Allyene
Brownsberger, and on behalf of a class of
similarly situated individuals,**

              Plaintiffs,

vs.                          Case No.

**KIMBERLING INN RESORT AND
VACATION CLUB, a Missouri non-profit
corporation,**

**TRR, LLC,**

**TRR MANAGEMENT, LLC,**

**TRR TIMESHARES, LLC,**

**THE ESTATE OF FRANK "JAY" STEED,
by and through its personal representative,**

**KIMBERLY STEED,**

**DEAN JOHNSON,**

**JULIE ROGERS,**

**STEPHEN C. BABBIT, as Successor Trustee
under the terms of the Amended Declaration
of Timeshare Unit Restrictions for
Kimberling Inn Resort and Vacation Club
Units,**

              Defendants.

# <u>VERIFIED CLASS ACTION COMPLAINT</u>

**COME NOW**, Martin Porter and Linda Porter, and Mark Brownsberger as the personal representative for the Estate of Allyene Brownsberger, through counsel, Douglas, Haun & Heidemann, P.C. on their own behalf and on behalf of a class of similarly situated individuals. For their Complaint, Plaintiffs state as follows:

1. Plaintiffs Martin Porter and Linda Porter are husband and wife residing in Polk County Missouri.

2. Plaintiff the Estate of Allyene Brownsberger is the successor in interest to Allyene Brownsberger, who died on or about December 12, 2021.

3. This Court has jurisdiction pursuant to U.S.C.A § 1332(d) in that:

    a. The amount in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs as the facts herein alleged establish;

    b. All Defendants are citizens of Missouri;

    c. More than two-thirds of all proposed class members are citizens of states other than Missouri as this case involves a condominium in which the majority of timeshare owners reside outside of Missouri;

    d. Plaintiffs' counsel performed a background search on a random sampling of the unit owners against whom Defendants claim a foreclosure right and 70% of those identified live outside of Missouri.

4. Defendant Kimberling Inn Resort and Vacation Club (Hereinafter the "Association") is a Missouri non-profit corporation in good standing with its principal place of business in Kimberling City, Stone County, Missouri. The Association can be served through its registered agent Russell Cook at 901 St. Louis Street, 20th Floor, Springfield, MO 65806.

5. The Association is the owners' association for those holding a timeshare interest in Kimberling Inn Resort and Vacation Club Units (hereinafter the "Resort").

6. The Resort is made up of condominium timeshare units.

7. Plaintiff Linda Porter is the owner of an undivided interest in Week #8 Unit #313 in the Kimberling Inn Resort and Vacation Club Units. Plaintiff Martin Porter is her husband and has marital interest in the unit week.

8. Plaintiff Mark Brownsberger as the personal representative of the Estate of Allyene Brownsberger is the successor in interest of an undivided interest in Week #22 Unit #119 and Week #52 Unit #319 in the Kimberling Inn Resort and Vacation Club Units.

9. Defendant TRR, LLC is a Missouri LLC whose registered agent is listed as Jay Steed—known to be deceased. TRR, LLC can be served at its principal office located at 11863 State Highway 13, Kimberling City, MO 65686.

10. The Resort and Association are governed by and operate subject to *The Amended Declaration of Time Share Unit Restrictions for Kimberling Inn Resort and Vacation Club Units*, as recorded in the Stone County Recorder's Office at Book 178, Page 1973 (hereinafter referred to as the "Declaration"). A true and accurate copy of said Declaration is filed herewith as Exhibit A.

11. The Declaration was executed by McGuire Consulting Corporation on or about November 6, 1985 and recorded with the Stone County Recorder's office.

12. TRR, LLC purports to be the Successor Declarant to McGuire Consulting Corporation by virtue of the *Assignment and Assumption of Declarant Rights* as recorded with the Stone County Recorder of Deeds at Book 2013, Page 14551 (hereinafter referred to as the

"Purported Assignment"). A true and accurate copy of said Purported Assignment is filed herewith as Exhibit B.

13. Defendant TRR Management, LLC is a Missouri LLC in good standing. It can be served at its principal office at 11863 State Highway 13, Kimberling City, MO 65686. This Defendant operates out of the Resort clubhouse and does the bidding of the purported Successor Declarant TRR, LLC and the executive board of the Association which at all times relevant was wholly appointed and controlled by TRR, LLC and/or its officers, members and/or employees.

14. Defendant TRR Timeshares, LLC is not registered to do business in Missouri. On information and belief, this Defendant's principal office is located at 11863 State Highway 13, Kimberling City, MO 65686 where it can be served.

15. On information and belief, TRR Timeshares, LLC has been assigned the unsold unit weeks in the Resort.

16. Defendants TRR Management, LLC and TRR Timeshares, LLC are the wholly owned and/or controlled subsidiaries and/or agents of Defendant TRR, LLC and have acted in concert to do the unlawful acts as set forth below.

17. Defendant Kimberly Steed is a resident of the State of Missouri and at all times relevant was a member of TRR, LLC and/or TRR Management, LLC and/or TRR Timeshares, LLC and has been unlawfully acting as an executive board member of the Association as herein alleged.

18. Defendant the Estate of Frank "Jay" Joseph Steed is the successor in interest to Jay Steed whose unlawful acts described herein give rise to Plaintiffs' and Class Members' claims. Decedent Steed unlawfully acted as an executive board member of the Association as herein alleged.

19. Defendant Julie Rogers is an individual residing in the State of Missouri. Defendant Rogers unlawfully acted as an executive board member of the Association as herein alleged.

20. Defendant Dean Johnson is an individual residing in the State of Missouri. Defendant Johnson unlawfully acted as an executive board member of the Association as herein alleged.

21. Defendant Stephen C. Babbit is an individual residing in the State of Missouri. Defendant Babbit is being sued in his capacity as the purported Successor Trustee under the terms of the Amended Declaration of Timeshare Unit Restrictions for Kimberling Inn Resort and Vacation Club Units claiming the right to foreclose on Plaintiffs' and purported class members' interests in the Resort on July 12, 2022 in Stone County Missouri.

## Summary of Claim

22. Missouri's Uniform Condominium Act ("UCA"), RSMo. §§ 448.1-101 to 448.4-120, is a comprehensive statutory scheme that unified and modernized the law of condominiums in this state.

23. When a land developer decides to declare a condominium, it executes and records declarations describing the land it is submitting to be consider a resort and identifying the entity that will serve as the homeowner's association for those who purchase units in the condo. These developers are typically referred to as declarants who can reserve "special declarant rights" to itself and its assigns in the resort.

24. These special declarant rights include the right to develop the resort, use resort property for sales, and appoint executive board members to act on behalf of the association.

25. However, if a successor declarant fails to sign the recorded document purporting to transfer declarant rights to an assignee, the successor does not receive these special declarant rights and the declarant is no longer in control of the resort.

26. At that point, control passes to the association and its executive board which the UCA requires to be made up of members elected solely by unit owners and at least one member must be a unit owner.

27. Where condo declaration terms implemented since the UCA's passing contradict or fail to comply with the UCA, the UCA preempts and invalidates those terms.

28. Plaintiffs are timeshare owners in the Resort and members of the Association.

29. Defendant TRR, LLC purports to be the successor declarant to the original developer of the Resort. However, the purported assignment to TRR, LLC was not signed by anyone on its behalf. Likewise, none of the purported assignees who preceded TRR, LLC in interest signed their purported assignments. As a result, the Resort in this case is no longer subject to declarant control by operation of the UCA.

30. Although it did not receive a proper assignment of "special declarant rights," Defendant TRR, LLC has continuously and without interruption exercised special declarant rights at the Resort, including, but not limited to:

    a. Appointing executive board members;

    b. Maintaining sales and business offices on the Resort;

    c. Developing the Resort;

    d. Directing its wholly appointed executive board members to assess unit owners' fees, while simultaneously not paying fees on the unit weeks it received from its successors in interest;

    e. Converting the Resort into an RCI points resort from its original deed-week scheme.

31. TRR, LLC has maintained this control by using the voting terms found in the declaration which purportedly grant to TRR, LLC, the right to one vote for each unit week it owns in the resort while not having any of the fee obligations of a typical unit owner.

32. The UCA expressly precludes declarants like TRR, LLC from engaging in this particular conduct because it requires declarants to be treated as any other unit week owner, including paying fee assessments, and preventing them from using cumulative voting to retain special declarant rights when it has not received a proper assignment of such rights.

33. Because of TRR, LLC's violation of the UCA, its actions, including the appointment of executive board members, are null and void and any obligations purportedly created to unit owners by such conduct is likewise null and void—such its unlawful assessment of fees against unit owners.

34. Defendant now seeks to foreclose on the remaining deeded week owners who have refused to convert their deeds into RCI points or return their deeded weeks back to TRR, LLC, so that it can complete its conversion of the Resort to an RCI resort.

35. TRR, LLC is attempting to use its unlawful and void fee assessments to accomplish this task.

36. The UCA does not allow this type of conduct and the Court must stop Defendants from completing their illegal foreclosures on Plaintiffs' and class members' property.

37. Furthermore, Defendants are attempting to foreclose on assessments outside the three-year statute of limitations period.

### History of Declaration, Amendments and Purported Assignments

38. McGuire Consulting Corporation initially declared the Resort as a condominium on or about August 6, 1982, via the ***Declaration of Time Share Unit Restrictions for Kimberling***

**Resort and Vacation Club Units** as recorded in the Stone County Recorder's Office at Book 160, Page 1354. A true and accurate copy of said document is filed herewith as Exhibit C.

39. Said document named the Kimberling Resort and Vacation Club Association, Inc. as the homeowners' association for the Resort.

40. The Missouri Secretary of State has no record that Kimberling Resort and Vacation Club Association, Inc. was ever registered with the State.

41. Because the Resort was initially declared before September 28, 1983, it was first governed by the Condominium Property act at RSMo. §§ 448.005 through 448.220.

42. In or about 1983, the Missouri Legislature passed the Uniform Condominium Act ("UCA"), RSMo. §§ 448.1-101 to 448.4-120, to create a comprehensive statutory scheme to unify and modernize the law of condominiums.

43. To bring the Resort within the applicability of the UCA, McGuire Consulting Corporation executed and recorded an amended declaration for the Resort in 1985 which restated the declaration in its entirety. *See* Declaration, Exhibit A.

44. The Declaration identified, for the first time, Kimberling Inn Resort and Vacation Club as the homeowners' association for the Resort.

45. On or about August 21, 1986, McGuire Consulting Corporation executed a Corporation Warranty Deed purporting to convey the Resort and common elements and assign the declarant rights of the Declaration, including ownership of the unsold timeshare units for the Resort, to Impact Management, Inc. A true and accurate copy of the deed is filed herewith as Exhibit D.

46. No one signed the Corporation Warranty Deed on behalf of Impact Management, Inc.

47. On or about September 18, 1989, Impact Management, Inc. executed a Quit Claim Deed in favor of Steven Redford as recorded with the Stone County Recorder of Deeds at Book 198, Page 549, purporting to convey the Resort and common elements and assign the declarant rights of the Declaration, including ownership of the unsold timeshare units for the Resort. A true and accurate copy of said Quit Claim Deed is filed herewith as Exhibit E.

48. Steven Redford did not sign the deed.

49. On or about November 6, 1989, Steven Redford and Vineta Redford, husband and wife, executed a Quit Claim Deed in favor of Redford Enterprises, Inc. as recorded with the Stone County Recorder of Deeds at Book 198, Page 554, purporting to convey the Resort and common elements and assign the declarant rights of the Declaration, including ownership of the unsold timeshare units for the Resort. A true and accurate copy of said Quit Claim Deed is filed herewith as Exhibit F.

50. No one signed the deed on behalf of Redford Enterprises, Inc.

51. On or about October 30, 1990, Redford Enterprises, Inc. executed a Warranty Deed, as recorded with the Stone County Recorder of Deeds at Book 201, Page 449, purporting to convey the Resort and common elements and assign the declarant rights of the Declaration, including ownership of the unsold timeshare units for the Resort, to Kimberling Properties, Inc. A true and accurate copy of said Warranty Deed is filed herewith as Exhibit G.

52. No one signed the Warranty Deed on behalf of Kimberling Properties, Inc.

53. On or about August 19, 2013, Kimberling Inn, Inc. and Kimberling Properties Inc. purported to convey the Resort and common elements and assign the declarant rights of the Declaration, including ownership of the unsold timeshare units for the Resort, to TRR, LLC by the ***Assignment and Assumption of Declarant Rights*** as recorded in the Stone County Recorder

of Deeds at Book 2013, Page 14551 ("Purported Assignment"). A true and accurate copy of the Purported Assignment is filed herewith as Exhibit B.

54. The Purported Assignment was not signed by anyone on behalf of TRR, LLC.

55. As a condominium regime declared in 1985, the Resort and Association are subject to the Missouri Uniform Condominium Act, RSMo. §§ 448.1-101 through 448.4-120.

56. Pursuant to RSMo. § 448.3-104.1, no special declarant rights may be transferred except by an instrument evidencing the transfer recorded in every county in which any portion of the condominium is located and the assignment instrument is not effective unless executed by the transferee.

57. As a result, the purported assignments of declarant rights following the execution and recording of the Declaration by McGuire Consulting Corporation in November of 1985 were not effective to transfer any special declarant rights found in the Declaration to any of the purported Successor Declarants.

58. The effect of such failure terminated declarant control of the Resort and Association.

59. By executing and recording the Declaration, McGuire Consulting Corporation subjected the entirety of the real property—described in the legal description appended to the Declaration as Exhibit A—to the restrictions, rights and obligations contained in the Declaration and thereby established the Resort.

60. The Declaration creates ownership, voting, and access rights in the Resort for a proper Declarant.

61. The Declaration defines "Declarant" as "McGuire Consulting Corporation, a Missouri corporation, its successors and assigns."

Case 3:22-cv-05048-BCW    Document 1    Filed 06/29/22    Page 10 of 53

62. The Declaration defines "Unit" as:

[T]hat part of a building intended for individual, private use by a Single Family comprised of one or more cubicles of air to one or more levels of space having outer boundaries formed by the interior surfaces of the perimeter walls, floors, ceilings, windows, window frames, door and door frames of the building, as said boundaries are shown on the building and floor plans contained in the Plat together with all fixtures and improvements therein contained.

63. The Declaration defines "Unit Week" as "an undivided 1/52 fee simple interest in a unit."

64. The Declaration defines "Unit Owner" or "Owner" as:

[T]he owner, whether one or more persons or entities, in fee simple of any Unit Week (as designated in the Warranty Deed which conveys a Unit Owner his interest in the Unit) but excluding the Declarant and those having such interest merely as security for the performance of an obligation.

65. The Declaration defines "Member" as "a Unit Week Owner who is a member of the Association and is entitled to vote at meetings of the Association's membership."

66. The Declaration defines "Association" as the "Kimberling Inn Resort and Vacation Club[.]"

67. The Declaration defines the "Membership in Association" to include "Each Owner (Including Declarant)[.]"

68. The Declaration defines "Property" as "the property, described on Exhibit 'A' . . . together with all appurtenances, littoral and riparian rights, easements and all improvements thereon and such additions thereto as may hereafter be made subject to the Restrictions and thereby automatically brought within jurisdiction of the Association as provided in the Articles of Incorporation and Bylaws."

69. The Declaration vests the Association with:

The management, operation, maintenance and repair of the Property, the acquisition (by purchase or lease), maintenance, repair and replacement of the

Common Furnishings and the administration of the affiars [sic] of the Owners, the use and occupancy of the Units and payment, as agent, of expenses and costs enumerated in this Declaration shall be under the direction and control of the Association. The Association shall have the duty to maintain and repair the Property, to acquire (by lease or purchase), maintain, repair and replace Common Furnishings as needed, to administer the Project operation as provided herein and to levy, collect and enforce the Assessments enumerated in this Declaration.

70. The Declaration Defines "Common Areas" as:

[A]ny area designated for a common use and benefit of the unit purchasers, tenants and invitees of each, including, but not by way of limitation, parks, playgrounds, swimming, pools, fishing dock, recreational facilities, tennis courts, commons, entrance grounds, footways, including buildings, structures and personal properties incident thereto, and any other properties owned and maintained by the Association for the common benefit and enjoyment of the residents within the Property.

## The Association Voting Rights

71. The Declaration provides that "Each Owner (including Declarant) shall be a member of the Association and shall remain a member thereof until he ceases to be an owner."

72. The Declaration sets out the voting rights of Association members.

73. The Declaration provides that "Class A Members shall be all owners, except Declarant, and shall be entitled to one (1) vote for each Unit Week Owned[.]"

74. The Declaration provides that the Declarant shall have a "Class B" voting membership giving declarant "nine (9) votes for each Unit Week owned" and that the "Class B Membership shall cease and be converted to Class A membership when the total outstanding votes held by the Class B Member equals less than five percent (5) of the total voting power of the Association."

**Declarant's Exercise of Special Declarant Rights Post Special Rights Termination**

75. RSMo. § 448.1-103.27 defines "Special declarant rights" to include the "rights reserved for the benefit of a declarant . . . to appoint or remove any officer of the association . . . or any executive board member during any period of declarant control[.]"

76. The Declaration provides the Declarant with the right to appoint Association officers and board members by allocating votes to Declarant for every un-deeded unit week without imposing the obligations of unit ownership upon Declarant, such as the requirement that unit owners pay general and special assessments approved by the Association and its executive board.

77. Thus, the effect of the Declaration's voting scheme is to extend the period of Declarant control of the Resort—after declarant control was extinguished by operation of RSMo. § 448.3-104—and pass "special declarant rights" to Declarant even though such rights were not assigned to it. This the UCA does not allow.

78. Specifically, RSMo. § 448.2-107.3 provides in part, "A declarant may not utilize cumulative or class voting for the purpose of evading any limitation imposed on declarants by sections 448.1-101 to 448.4-120, nor may units constitute a class because they are owned by a declarant."

79. The UCA also forecloses the special treatment given to Declarant in the Declaration by defining "unit owner" to mean "a declarant or other person who owns a unit[.]" RSMo. § 1-103(30). Thus, the Declaration's definition of "unit owner" is expressly preempted by the UCA's definition.

80. The UCA's purpose for including declarants in the definition of "unit owner" is to prevent declarants, such as Defendant, from enjoying the benefits of unit ownership—such as control over the association and its executive board—without imposing the obligations of unit

ownership—such as paying all assessments imposed by the association for the unit weeks owned by the declarant. *See* Unif. Condominium Act § 1-103 comment 16 (1980).

81. The UCA expressly prevents declarants from evading its limitations by utilizing creative language in the Declaration. *See* RSMo. § 448.1-104. Thus, the UCA holds void declaration terms that extend declarant control after such control has terminated by operation of the UCA, even where those terms are disguised as owner rights.

82. Because the above-referenced Declaration terms vary from the UCA to extend Declarant control over the Association when such control ended as a matter of law, the terms of the Declaration that have allowed the Declarant to avoid the limitations and obligations imposed by the UCA are null and void and Defendants' actions taken pursuant to those voided terms are also null and void.

83. Defendant TRR, LLC's began its unauthorized exercise of declarant control over the Resort and Association in 2013 after the execution and recording of the Purported Assignment.

84. As the purported Declarant, Defendant TRR, LLC asserted its control over the Resort and Association.

85. The minutes from the Association's December 10, 2013 meeting reveal Defendants' plan for the Resort, which included in part:

    a)  Convert the Resort's deed-weeks scheme into an RCI timeshare points scheme;

    b)  Direct the Association to pay an alleged debt to Defendants in the amount of $900,000;

    c)  Develop the Resort to include new units and amenities.

Exhibit H - 2013 Association Meeting Minutes.

86. Defendant's first step in the takeover of the Resort was to use TRR, LLC's purported ownership of unit weeks to exercise its control over the Resort and Association by using its cumulative votes to appoint the members of the Association's executive board, while simultaneously refusing to pay its share of the Association assessments applicable to its unit weeks owned.

87. Defendant TRR, LLC appointed its own President, Jay Steed, its own member, Kim Steed, and its own employee, Julie Rogers, to the Association's executive board.

88. On information and belief, the Association's executive board, controlled exclusively by Defendant TRR, LLC set the general assessment for the Association's membership to pay for calendar year 2014.

89. On information and belief, the executive board approved a special assessment for the 2014 calendar year. However, no record of such approval is found in the 2013 meeting minutes.

90. On information and belief, Defendant TRR, LLC itself or through one of its wholly owned and/or controlled subsidiaries, affiliates or agents owned at least 1880-unit weeks at all times relevant herein.

91. On information and belief, neither Defendant TRR, LLC or its subsidiaries, affiliates or agents paid the general assessments or special assessments owed on its unit weeks in calendar year 2014.

92. On September 10, 2014, the Association's board met and set the 2015 general assessments for the units, ranging from $373.96 per week up to $523.52, depending on unit type. Exhibit I - 2014 Executive Board Meeting Minutes.

93. On information and belief, TRR, LLC again did not pay the general assessment owed on its unit weeks owned.

94. Using the lowest assessment basis of $373.96, TRR, LLC owed at least $703,044.80 in assessments ($373.96 x 1880 unit weeks).

95. Defendant TRR, LLC again exercised its control over the Association by again appointing its own members and/or employees to the Association executive board using its 1880 votes. Exhibit J - 2014 Association Meeting Minutes.

96. The Association collected $1,015,416.32 in general assessments for 2013, $986,854.43 in general assessments for 2014 and $850,436.37 for the 2014 special assessment. *Id*.

97. The Association's executive board met for its 2015 meeting on October 12, 2015 and again set the general assessment amounts for the unit weeks. For 2016, the assessments ranged between $407.62 to $596.81. Exhibit K - 2015 Executive Board Meeting Minutes.

98. Using the lowest assessment basis for 2016, TRR, LLC owed at least $766,325.60 for its unit weeks owned.

99. On information and belief, TRR, LLC never paid its assessments for 2016.

100. On December 8, 2015, the Association held its yearly meeting.

101. Defendant TRR, LLC again exercised its control over the Association by again appointing its own officers, members and/or employees to the Association executive board using its unit votes. Exhibit L - 2015 Association Meeting Minutes.

102. The executive board held its 2016 meeting on October 18, 2016 and increased the general assessments for 2017 by 4%. Exhibit M - 2016 Executive Board Meeting Minutes.

103. As a result, the general assessments for 2017, ranged from $423.93 to $620.68.

104. Using the lowest assessment basis for 2017, TRR, LLC owed at least $796,988.40 for its unit weeks owned.

105.     On information and belief, Defendant TRR, LLC did not pay its general assessments for 2017.

106.     The Association held its meeting on December 12, 2016.

107.     Defendant TRR, LLC again exercised its control over the Association by again appointing its own officers, members and/or employees to the Association executive board. This time, Defendant did not even call a vote and instead simply reappointed the sitting board members. Exhibit N - 2016 Association Meeting Minutes.

108.     The executive board exclusively under the control of TRR, LLC held its 2017 meeting on October 17, 2017.

109.     The executive board meeting minutes do not evidence that the executive board approved a general assessment for 2018. Exhibit O - 2017 Executive Board Meeting Minutes.

110.     On information and belief, the Association still represented to its members that a general assessment was due.

111.     Using the 2017 assessment, TRR, LLC's share of assessments would be at least $796,988.40 for its unit weeks owned, if the 2018 general assessment was actually approved.

112.     The Association held its 2017 meeting on December 12, 2017.

113.     The meeting minutes evidence that TRR, LLC continued its control over the Association and its executive board. The meeting minutes reflect that the Association did not even address the election of new executive board members. Instead, those board members—again exclusively under the control of officers, members, and/or employees of Declarant TRR, LLC—simply remained in their positions for another year. Exhibit P - 2017 Association Meeting Minutes.

114.     The Association held its 2018 yearly meeting on December 11, 2018.

115. The executive board approved making a special assessment of up to $1000 per unit week, although no final decision was made on the amount of the assessment as of the date of the meeting. Exhibit Q - 2018 Association Meeting Minutes.

116. Declarant TRR, LLC continued its control over the Resort, Association and executive board. Jay Steed appointed Dean Johnson, who was at that time the CFO for TRR, LLC, to the executive board. A vote was not held on the other two executive board positions. *Id.*

117. Declarant TRR, LLC set the general assessments for 2019 which ranged from $458.36 to $671.38.

118. The general assessment for 2019 would mean that TRR, LLC owed at least $861,716.80 in assessments for each unit week owned.

119. On information and belief, TRR, LLC did not pay its 2019 general assessments.

120. On February 6, 2019, the executive board held a special meeting to determine the amount it would impose for the 2019 special assessment.

121. The executive board assessed a special assessment in the amount of $780.00 for each unit owner, such assessment becoming due on June 1, 2019. Exhibit R - 2019 Special Meeting Minutes; Exhibit S - 2019 Special Assessment Notice.

122. The executive board made the special assessment for the purpose of updating specific units and not all units contained in the condominium. Specifically, the executive board would be updating the units in the 100 and 200 blocks but would not be using the assessment funds to update the 300 block units.

123. Thus, the special assessment on all unit owners was in violation of RSMo. § 448.3-115.3(2).

124. TRR, LLC's obligation for the special assessment was at least $1,466,400.00.

125.    The 2019 special assessment was for more than 150% of the Association's 2019 budget when considering the total number of unit weeks in the condominium.

126.    As of 2019, the condominium included 101 units at 52-unit weeks per year for a unit week total of 5252 bringing the total assessment of $780 per unit week to $4,096,560.00.

127.    On information and belief, TRR, LLC did not pay its share of the 2019 special assessment.

128.    The meeting minutes evidence TRR, LLC's intention to recover all outstanding unit weeks and convert the Resort into an RCI points-based operation.

129.    Defendant TRR, LLC used the voting scheme found in the Declaration to avoid the limitations and obligations imposed on it by the UCA. Specifically, as evidenced above, Defendant TRR, LLC used the voting scheme to retain the special declarant right of control over the Association and Resort by using its vote total (that could never realistically be defeated) to appoint the executive board members and officers of the Association.

130.    The actions taken by the executive board and the association are also void because they failed to send notice of the time, place and purpose of each meaning by hand delivering such notice or mailing such notice to unit owners as required by RSMo. § 448.3-108.

131.    The actions taken by the executive board and association are also void because the association board was not properly organized under RSMo. § 448.3-103 in that:

   a.    The executive board acted on behalf of the Association to elect board members;

   b.    The executive board did not include at least one board member elected by owners other than declarant after at least 25% of the unit weeks had been conveyed;

   c.    The executive board did not include at least three members elected by owners other than the declarant after the termination of Declarant control;

d. A majority of board members were not unit owners after the termination of Declarant control.

132. The special assessments in 2014 and 2019 are also void because the Association and/or executive board and/or Defendant TRR, LLC failed to provide a supplemental budget to all unit owners after it made the decision to impose such special assessments.

133. The UCA also defines "special declarant rights" to include a declarant's right "to exercise any development right" in a condominium.

134. Defendant TRR, LLC exercised development rights in the condo without first obtaining the necessary approval of a properly organized executive board of the Association.

135. Defendant TRR, LLC, either itself or through its subsidiaries, affiliates and/or agents TRR Management, LLC and/or TRR Timeshares, LLC, exercised development rights and other special declarant rights it did not possess by, among other things:

a. Expanding and/or reorganizing the condominium by becoming an RCI resort and converting the unit week scheme and/or deeds into an RCI points system;

b. Adding onto, developing, remodeling, and/or repurposing common elements of the Resort, including the clubhouse, office space, infrastructure and greenways;

c. Creating and/or maintaining a sales office on Resort property;

d. Renting out unit weeks owned by persons whom Declarant deemed to be delinquent on its unauthorized and void general and special assessments;

e. Maintaining an onsite sales offices for the purpose of selling and marketing its RCI points scheme and unit week scheme conversion.

136. Defendants TRR, LLC, TRR Management, LLC, and TRR Timeshares, LLC have used the common elements declared for the Resort for their own use and benefit and paid

themselves money from the proceeds generated by their unlawful use of the Resort and unit owners' property.

137.    By appointing its affiliates to the executive board, Defendant TRR, LLC abused the Declaration and gave itself powers and rights it did not receive in its assignment and that are prohibited by the UCA. Defendant TRR, LLC and its affiliates used such scheme to generate profits for itself which are property and/or assets of the Association.

### The Foreclosure

138.    To further its plan to convert the Resort into exclusively an RCI points-scheme Resort, Defendant TRR, LLC through its wholly appointed and controlled executive board has moved to foreclose on the outstanding deeded unit week owners.

139.    On information and belief, there are more than 1,400 deeded week owners against whom Defendants are attempting to foreclose.

140.    Defendants caused to be recorded with the Stone County Recorder of Deeds a *Notice of Lien for Unpaid Assessments*, listing all unit week owners Defendants claim owe unpaid assessments and the purported amount of each unpaid assessment and related fees owed by each unit owner. A true and accurate copy of said notice is filed herewith as Exhibit T.

141.    Plaintiff Martin Porter is listed in the notice as owing $5,852.71 in assessments and related interest and fees.

142.    The predecessor in interest of Plaintiff Mark Brownsberger as the personal representative of the Estate of Allyene Brownsberger is listed in the notice as owing $2,249.85 in assessments and related interest and fees on Week #22 Unit #119 and $2,671.41 on Week #52 Unit #319.

143.     Plaintiffs and their predecessors in interest have at all times relevant, paid all properly assessed general and special assessments.

144.     On or about June 17, 2022, Plaintiffs Porter received a letter from Stephen C. Babbit, purporting to be a "Successor Trustee." Stephen C. Babbit intends to foreclose on Plaintiffs' unit week by trustee's sale at the "old" Stone County Courthouse, located at 110 Maple St., Galena, MO, to purportedly satisfy the principal and interest on unpaid assessments. A true and accurate copy of said letter is filed herewith as Exhibit U.

145.     On or about June 17, 2022, Plaintiff Brownsberger received two letters from Stephen C. Babbit, purporting to be a "Successor Trustee." Stephen C. Babbit intends to foreclose on Plaintiffs' unit week by trustee's sale at the "old" Stone County Courthouse, located at 110 Maple St., Galena, MO, to purportedly satisfy the principal and interest on unpaid assessments. True and accurate copies of said letters are filed herewith as Exhibits V and W.

146.     On information and belief, Defendants intend to foreclose on Plaintiffs' and each of the more than 1400 other unit week owners' interests in the Resort at 10:00 a.m. on July 12, 2022 at the "old" Stone County Courthouse.

147.     The foreclosure is not proper because no assessments, general or special, have been properly assessed as required by the Declaration and/or UCA for the reasons described above.

148.     The foreclosure is also not proper because it is based on inaccurate calculations of assessments owed.

149.     Defendants are also precluded from foreclosing on any outstanding assessments that became due more than 3 years prior to July 12, 2022.

150. It is obvious from the ***Notice of Lien for Unpaid Assessments*** Defendants recorded with the Stone County Recorder of Deeds that they are attempting to foreclose on putative class members' interests based on assessments that became due more than three years prior to July 12, 2022, including the 2019 special assessments in that many of the class members delinquencies are listed at more than $13,000 and others are $2,000 or less.

151. As a result, the July 12, 2022 foreclosure proceeding is untimely pursuant to RSMo. § 448.3-116.5 which provides that "[a] lien for unpaid assessments is extinguished unless proceedings to enforce the lien are instituted within three years after the full amount of the assessments becomes due."

152. The Association is not attempting to collect the outstanding assessments not paid by TRR, LLC and/or its affiliates and is not attempting to foreclose on said outstanding assessments.

## CLASS ALLEGATIONS

153. Plaintiffs seek to represent the following classes of similarly situated unit week owners:

    a. All unit week owners, except any Defendant, in the Resort who have been assessed a general or special assessment since 2013.

    b. All members in the Association, except any Defendant, since 2013.

154. The claims of the named Plaintiffs are typical of the claims of the respective Class they seek to represent, in that each named Plaintiff and all members of the proposed Class are owners of unit weeks in the Resort, have been damaged by the unlawful actions of the Defendants, have been unlawfully assessed general and special assessments and against whom

Defendants seek to unlawfully foreclose their interests in the Resort based on unlawful general and special assessments and fees.

155.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes they represent.

156.    The representative Plaintiffs have retained counsel competent and experienced to represent them and the members of the proposed Classes. Accordingly, the interests of the Classes will adequately be protected and advanced. In addition, there is no conflict of interest among the representatives of the proposed Classes and the Classes they seek to represent.

157.    The interests of all Class members are aligned with their representatives because they have a strong interest in recovering damages for Defendants' failure to follow the requirements of the Declaration and the UCA to properly assess general and special assessments, making assessments that do not comply with the Declarations and/or the UCA, unlawful use of Resort property, unlawful exercise of special declarant rights and failure of Defendants to pay assessments on unit weeks owned.

158.    Notice can be provided to Class members by a combination of direct mail, published notice and first-class mail and email using techniques and forms of notice similar to those customarily used in class action cases. Further, Defendants maintain a database of the contact information for unit owners and Association members who qualify as Class members.

159.    Certification of the Class is appropriate because the questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members. These questions of law and fact include, but are not limited to:

      a.    Whether Defendants received an assignment of special declarant rights;

      b.    Whether Defendants exercised special declarant rights it did not possess;

c.   Whether the terms of Declaration herein addressed violate the UCA;

d.   Whether the Defendants used the terms of the Declaration to circumvent the limitations imposed by the UCA;

e.   Whether the Defendants used the terms of the Declaration to circumvent the limitations imposed by the UCA to retain special declarant rights and/or extend the period of Declarant control after such control was terminated by operation of law and/or the conduct of Declarant and/or its successors in interest;

f.   Whether Defendants owe the Association any amounts for unpaid assessments;

g.   Whether Defendants illegally and/or unjustly enriched themselves by exercising special declarant rights it/they did not possess;

h.   The extent to which Plaintiffs and Class members are entitled to damages, including compensatory damages, statutory damages, and punitive damages.

160.   Here, a class action is superior to other available remedies for the fair and efficient adjudication of this controversy because the amount in controversy is relatively small such that it would be impracticable for putative class members to file individual actions.

161.   The number of class members is so numerous that joinder of all parties is impracticable. On information and believe, the number of class members is in excess of 1400 members.

## COUNT I - TEMPORARY RESTRAINING ORDER

162.   Plaintiffs bring this claim against all named Defendants.

163.   Plaintiffs are individuals residing in Missouri and Plaintiffs have an ownership interest in the Resort.

164.   Plaintiffs are also members of the Association.

165.    The proposed classes consist of individuals having interest in the condominium property located in Stone County, Missouri.

166.    The instant complaint demonstrates that there is an amount in controversy between the parties exceeding Five Million Dollars.

167.    Jurisdiction for this application for Temporary Restraining Order is appropriate under the relevant portions of the Class Action Fairness Act (28 U.S.C.A. § 1332(d)).

168.    Defendants have their residency and/or principal place of business solely in the State of Missouri.

169.    On or about June 17, 2022, the Defendants provided notice to the Plaintiffs and to the proposed class that they intended to foreclose on their condominium property interests, with such sale to take place on or about July 12, 2022 in Stone County Missouri.

170.    More specifically, the Defendants have threatened to foreclose on the condominium interests of the Plaintiffs and proposed class members pursuant to claimed authority stemming from Article VIII, Section 8.01 of the "Amended Declaration of Time Share Unit Restrictions for Kimberling Inn Resort and Vacation Club Units" dated on or about November 6, 1985 and recorded with the Stone County Recorder's Office at Book 178 and Page 1973" (the Declaration).

171.    Section 11.07 of the Condominium Restrictions provides that the same are governed by and will be construed in accordance with the laws of the State of Missouri.

172.    The Defendants claim that the Declaration provides them with the authority to foreclose on the condominium property interests because there are alleged past due assessments due and owing by the Plaintiffs and the proposed class that constitute liens on the said condominium property interests that may be foreclosed upon pursuant to § 448.3-116 RSMo.

173.     Plaintiffs and the proposed class submit that the Defendants have no legal grounds upon which to proceed with the threatened foreclosure of their condominium property interests, for the following reasons:

a. Defendants unlawfully made general and special assessments in violation of the UCA as detailed above;

b. Defendant TRR, LLC unlawfully appointed the executive board members who determined the amount of each assessment Defendants claim are now due and upon which they seek to foreclose Plaintiffs' and class members' interests in the Resort;

c. The actions of the unlawfully organized executive board of the Association are null and void for their and/or the Declaration's violation of the provisions of the UCA and such assessments made pursuant to such actions are likewise null and void;

d. Defendants' calculation of the assessments are incorrect in that assessments due more than three years prior to the date of foreclosure have been extinguished by operation of law—even assuming, arguendo, that "assessments" in general may be properly assessed by the Defendants, this directly frustrates the ability of the Plaintiffs and the class to redeem their condominium property interests by paying what is actually due as opposed to what is incorrectly "claimed" to be due by the Defendants;

e. The Condominium Restrictions as recorded define the Association for the condominium property as the "Kimberling Inn Resort and Vacation Club" (the "Association"), and further provide that the Association has the exclusive power

and authority to enforce the Condominium Restrictions, which would include the right of foreclosure authorized by § 448.3-116 RSMo—the "receiver" or "trustee" appointed by the Association to conduct the foreclosure on the invalid assessment liens of the Plaintiffs and proposed class was appointed with the votes of the Defendants, which as set forth above would be invalid and unenforceable, and in short, the Plaintiffs and proposed class claim that there has been no one duly appointed by the Association with valid authority to conduct foreclosure in any event;

f. Even assuming, arguendo, that the alleged assessment liens are valid and enforceable, the Plaintiffs and proposed class in good faith do not believe that the Defendants instituted foreclosure proceedings within three (3) years of the same becoming due and said assessment liens have been extinguished as a matter of law pursuant to § 448.3-116.5 RSMo.

174.   By reason of the foregoing, Defendants have essentially provided notice to Plaintiffs and the proposed class and have stated their intention in writing to unlawfully take their condominium property interests and to further trespass on the same.

175.   Plaintiffs and proposed class in good faith believe that there are no valid assessment liens for which the Defendants may foreclose on for the reasons set forth above.

176.   Defendants have no property or possession rights for which they could foreclose on as to the condominium property interests of the Plaintiffs and proposed class.

177.   Plaintiffs and the proposed class have every reason to believe that, absent a court order, Defendants will make good on their threats to foreclose on their condominium property interests without having any legal basis for doing the same.

178. Plaintiffs have no adequate remedy at law, for the following reasons:

    a. The condominium property interests of the Plaintiffs and proposed class are unique pieces of real property interests at this location that cannot be readily replaced; and

    b. The Defendants threatened foreclosure threatens the Plaintiffs and the proposed class with the loss of their condominium property interests at a foreclosure sale to be conducted for the purpose of collecting on the tainted and forbidden (in whole or at least in part) assessment liens obtained by the Defendants in breach of a fiduciary duty. See, Groh v. Shelton, 428 S.W.2d 911, 918 (Mo. App. 1968).

179. Absent relief from this Court, Plaintiffs will, within fifteen (15) days of the filing of this Complaint, suffer immediate and irreparable injury, loss, or damage in the loss of their condominium property interests.

180. Plaintiffs in good faith believe that it will be possible to provide Defendants with prior notice of this application for restraining order prior to hearing on the same, and Plaintiffs will make every effort to do so. In the event that it is not possible to provide prior notice to the Defendants for any reason, the Plaintiffs and their counsel as necessary will provide a written certificate all efforts made to give notice and the reasons why it should not be required pursuant to F.R.C.P. 65(b)(1)(B).

181. Plaintiffs and proposed class submit that, in the event that this Court should determine that the Plaintiffs and proposed class are not entitled to injunctive relief as requested, the Defendants will be only nominally damaged in having to delay the foreclosure sale, as the Defendants will be out only the costs of having to re-publish and notice the same, and as such,

the Plaintiffs and proposed class pray for only nominal security or bond to be posted in order to obtain the requested injunctive relief pursuant to F.R.C.P. 65(c).

**WHEREFORE**, Plaintiffs pray the Court to issue a Temporary Restraining Order enjoining Defendants from foreclosing on their interests and the interests of the putative class members until such time as a hearing can be held for preliminary injunction, not to exceed fourteen (14) days as prescribed by law, and for such other relief as the Court deems proper under the circumstances.

## COUNT II – PRELIMINARY INJUNCTION

182.    Plaintiffs incorporate and reallege the foregoing paragraphs as if set out fully herein.

183.    Plaintiffs bring this claim against all named Defendants.

**WHEREFORE**, Plaintiffs pray the Court to issue a Preliminary Injunction enjoining Defendants from foreclosing on their interests and the interests of the putative class members until such time as a trial can be held on the merits on Plaintiffs' Application for Permanent Injunction, and for such other relief as the Court deems proper under the circumstances.

## COUNT III – PERMANENT INJUNCTION

184.    Plaintiffs incorporate and reallege the foregoing paragraphs as if set out fully herein.

185.    Plaintiffs bring this claim against all named Defendants.

**WHEREFORE**, Plaintiffs pray the Court for an Order declaring the parties' rights in the condominium property in question, and Plaintiffs further prays the Court to issue a Permanent Injunction enjoining Defendants from foreclosing on their interests and the interests of the

putative class members until such time as there are legitimate and legal grounds for the Defendants to do so, and for such other relief as the Court deems proper under the circumstances.

## **COUNT IV – ACCOUNTING**

186.     Plaintiffs incorporate and reallege the preceding paragraphs as if set out fully herein.

187.     Plaintiffs bring this claim against all named Defendants.

188.     RSMo. § 355.821 requires every non-profit corporation to maintain certain records, including, but not limited to, appropriate accounting records, the corporation's bylaws, minutes of all meetings within the past three years and financial statements of income and expenses.

189.     Section 355.826 requires a non-profit corporation to provide its members the right of inspection of the foregoing records upon request.

190.     Plaintiffs herein request production of such documents.

191.     Additionally, Plaintiffs and Class members paid money to Defendants for general and special assessments.

192.     Defendants took part in self-dealing and allowed Declarant to operate for-profit business(es) on the Resort without paying such profits to Plaintiffs, the Class or the Association.

193.     The complicated nature of the accounts at issue, the payments made, and profits received make it necessary for the Court to order the production of all documents relative to the moneys and profits received by Defendants so that Plaintiffs and the class members can properly determine the amount of their damages.

194.     Plaintiffs and class members have no other adequate remedy at law for the production of such documents.

**WHEREFORE**, Plaintiffs pray this Court enter judgment against Defendants requiring an account for all funds paid by Plaintiffs and class members and all funds retained by Defendants from revenues generated upon the Resort property, for Plaintiffs' damages, expenses and attorney's fees incurred herein and for such other relief as the Court deems just and proper.

## COUNT V – STATUTORY CLAIM PURSUANT TO § 448.4-117, RSMO.

195.     Plaintiffs incorporate and reallege the preceding paragraphs as if set out fully herein.

196.     Plaintiffs bring this claim against all named Defendants.

197.     RSMo. § 448.4-117 gives Plaintiffs and the putative class a private right of action to enforce violations of the Declarations and the UCA.

198.     Said statute also entitles Plaintiffs and the putative class to an award of reasonable attorney's fees.

199.     Pursuant to RSMo. § 448.4-117 Plaintiffs ask the Court to enforce the UCA as to the Resort and Declarations by:

    a.  Finding that Defendants did not receive an assignment of special declarant rights under the Declarations for failure to comply with RSMo. § 448.3-104.1 in that no instrument evidencing such transfer was recorded in Stone County executed by Defendants;

    b.  Finding that as a result of the failure to transfer special declarant rights, the period of declarant control has terminated by operation of law;

    c.  Finding that Defendants' exercise of special declarant rights, including (1) their appointment of executive board members of the association, (2) their assessment of general and special assessments, (3) their continued exercise of development

rights in the Resort, (4) their use of the Resort for purposes of business operations including sales and marketing, was done without authority and in violation of the UCA and that such actions are null and void for the purpose of imposing any obligations on Plaintiffs and class members including any obligation to pay general or special assessments assessed by the illegally organized executive board;

d. Finding that the Declarations violate the UCA by excluding Declarant and/or its heirs, assigns, affiliates and/or agents from the obligation to pay general and special assessments;

e. Finding that Defendants fail to provide notice of Association meetings to unit owners as required by RSMo. § 448.3-108 and the Declarations;

f. Finding that the common elements including all Property declared as part of the Resort are the property of the unit week owners and/or the Association and not the property of any of the other named Defendants;

g. Holding null and void any and all appointments of executive board members of the Association from 2013 to present;

h. Holding null and void any votes or actions taken on behalf of the Association by the executive board from 2013 to present;

i. Finding that Defendants failed to fulfill their fiduciary duties to the Association members by failing to properly assess general and special assessments against the unit weeks owned by Defendants;

      j.   Finding that Defendants failed to exercise ordinary, reasonable care in their duties to the Association members by failing to properly assess general and special assessments against the unit weeks owned by Defendants;

      k.   Finding that Defendants are not entitled to foreclose on Plaintiffs' and class members interests in the Resort;

      l.   Hold void any and all terms of the Declaration that do not comply with the UCA.

200.    As a direct and proximate result of Defendants' actions described above, Plaintiffs and the class have been damaged.

201.    Plaintiffs and class members are entitled to disgorgement of any profits received by Defendants for their unlawful business activities on the resort.

202.    Plaintiffs and class members are entitled to a money judgment against Defendants in an amount equal to the value of the assessments they paid since 2013, such sum being in excess of $5,000,000.00.

203.    Plaintiffs and class members are entitled to a judgment ordering Defendants to pay the value of any assessments actually due and owed by them on any proper assessments the executive board and/or Association failed to collect from Defendants, such sum being in excess of $5,000,000.00.

204.    Plaintiffs have incurred, and will continue to incur, expenses and attorney's fees in enforcing their rights and are entitled to an award of these expenses.

**WHEREFORE**, Plaintiffs pray this Court enter an order certifying this case as a class action pursuant to Rule 23, enter its judgment against Defendants and award the relief herein requested including damages, attorney's fees and expenses and such other relief as the Court deems just and proper.

## COUNT VI – DECLARATORY JUDGMENT PURSUANT TO U.S.C.A § 2201

205.    Plaintiffs incorporate the preceding paragraphs as if set out fully herein.

206.    Plaintiffs bring this claim against all named Defendants.

207.    There exists an actual justiciable controversy between Plaintiffs, the Classes and Defendants.

208.    Plaintiffs ask the Court to Declare the following and enforce the UCA as to the Resort and Declarations by:

    a.    Finding that Defendants did not receive an assignment of special declarant rights under the Declarations for failure to comply with RSMo. § 448.3-104.1 in that no instrument evidencing such transfer was recorded in Stone County executed by Defendants;

    b.    Finding that as a result of the failure to transfer special declarant rights, the period of declarant control has terminated by operation of law;

    c.    Finding that Defendants' exercise of special declarant rights, including (1) their appointment of executive board members of the association, (2) their assessment of general and special assessments, (3) their continued exercise of development rights in the Resort, (4) their use of the Resort for purposes of business operations including sales and marketing was done without authority and in violation of the UCA, and that such actions are null and void for the purpose of imposing any obligations on Plaintiffs and class members including any obligation to pay general or special assessments assessed by the illegally organized executive board;

d.  Finding that the Declarations violate the UCA by excluding Declarant and/or its heirs, assigns, affiliates and/or agents from the obligation to pay general and special assessments;

e.  Finding that Defendants fail to provide notice of Association meetings to unit owners as required by RSMo. § 448.3-108 and the Declarations;

f.  Finding that the common elements including all Property declared as part of the Resort are the property of the unit week owners and/or the Association and not the property of any of the other named Defendants;

g.  Holding null and void any and all appointments of executive board members of the Association from 2013 to present;

h.  Holding null and void any votes or actions taken on behalf of the Association by the executive board from 2013 to present;

i.  Finding that Defendants failed to fulfill their fiduciary duties to the Association members by failing to properly assess general and special assessments against the unit weeks owned by Defendants;

j.  Finding that Defendants failed to exercise ordinary, reasonable care in their duties to the Association members by failing to properly assess general and special assessments against the unit weeks owned by Defendants;

k.  Finding that Defendants are not entitled to foreclose on Plaintiffs' and class members' interests in the Resort;

l.  Hold void any and all terms of the Declaration that do not comply with the UCA.

209.    As a direct and proximate result of Defendants' actions described above, Plaintiffs and the class have been damaged.

210. Plaintiffs and class members are entitled to disgorgement of any profits received by Defendants for their unlawful business activities on the resort.

211. Plaintiffs and class members are entitled to a money judgment against Defendants in an amount equal to the value of the assessments they paid since 2013, such sum being in excess of $5,000,000.00.

212. Plaintiffs and class members are entitled to a judgment ordering Defendants to pay the value of any assessments actually due and owed by them on any proper assessments the executive board and/or Association failed to collect from Defendants, such sum being in excess of $5,000,000.00.

213. Plaintiffs have incurred, and will continue to incur, expenses and attorney's fees in enforcing their rights and are entitled to an award of these expenses.

**WHEREFORE**, Plaintiffs pray this Court enter an order certifying this case as a class action pursuant to Rule 23, enter its judgment against Defendants and award the relief herein requested including damages, attorney's fees and expenses and such other relief as the Court deems just and proper.

## <u>COUNT VII – BREACH OF FIDUCIARY DUTY</u>

214. Plaintiffs incorporate and reallege the preceding paragraphs as if set out fully herein.

215. Plaintiffs bring this claim against Kimberly Steed, the Estate of Frank "Jay" Joseph Steed, Julie Rogers, Dean Johnson.

216. The Defendant executive board members were appointed by Defendant TRR, LLC.

217.    As a result, said board members owed a fiduciary duty to the unit owners pursuant to RSMo. § 448.3-103.1.

218.    The executive board members breached their fiduciary duties by, among other things:

      a.  Failing to properly assess general and special assessments;

      b.  Failing to properly collect assessments;

      c.  Failing to give proper notice of Association meetings;

      d.  Failing to send supplemental budgets after making special assessments;

      e.  Failing to require Declarant and/or its affiliates, subsidiaries and/or agents to pay the assessments owed on their unit weeks;

      f.  Allowing Declarant and its related entities, members, officers, employees and/or agents to conduct business on the Resort;

      g.  Allowing Declarant to exercise appointment power over the board after the period of declarant control had terminated by operation of law;

      h.  Allowing Declarant to vote as a unit owner without requiring Declarant to pay its share of the assessments;

      i.  Assessing unlawful assessments against unit owners.

219.    As a direct and proximate result of Defendants' actions described above, Plaintiffs and the class have been damaged.

220.    Plaintiffs and class members are entitled to the fair market rental value from Defendants for the unauthorized use of the Resort, such sum being in excess of $5,000,000.00.

221.    Plaintiffs and class members are entitled to a refund from Defendants of all of the assessments they paid since 2013, such sum being in excess of $5,000,000.00.

222.    Plaintiffs and class members are entitled to a judgment ordering Defendants to assess the value of any assessments actually due and owed by Declarant to the Association on any proper assessments the executive board and/or Association failed to collect from Defendants, such sum being in excess of $5,000,000.00.

223.    Plaintiffs have incurred, and will continue to incur, expenses and attorney's fees in enforcing their rights and are entitled to an award of these expenses.

**WHEREFORE**, Plaintiffs pray this Court enter an order certifying this case as a class action pursuant to Rule 23, enter its judgment against Defendants and award the relief herein requested including damages, attorney's fees and expenses and such other relief as the Court deems just and proper.

## COUNT VIII – NEGLIGENCE

224.    Plaintiffs incorporate and reallege the preceding paragraphs as if set out fully herein.

225.    Plaintiffs bring this claim against Kimberly Steed, the Estate of Frank "Jay" Joseph Steed, Julie Rogers, Dean Johnson.

226.    The Defendant executive board members owed a duty to the unit owners to exercise ordinary and reasonable care pursuant to RSMo. § 448.3-103.1.

227.    The executive board members breached their duties by, among other things:

a.    Failing to properly assess general and special assessments;

b.    Failing to properly collect assessments;

c.    Failing to require Declarant and/or its affiliates, subsidiaries and/or agents to pay the assessments owed on their unit weeks;

d. Allowing Declarant and its related entities, members, officers, employees and/or agents to conduct business on the Resort;

e. Allowing Declarant to exercise appointment power over the board after the period of declarant control had terminated by operation of law;

f. Allowing Declarant to vote as a unit owner without requiring Declarant to pay its share of the assessments;

g. Assessing unlawful assessments against unit owners.

228.   As a direct and proximate result of Defendants' actions described above, Plaintiffs and the class have been damaged.

229.   Plaintiffs and class members are entitled to the fair market rental value from Defendants for the unauthorized use of the Resort, such sum being in excess of $5,000,000.00.

230.   Plaintiffs and class members are entitled to a refund from Defendants of all of the assessments they paid since 2013, such sum being in excess of $5,000,000.00.

231.   Plaintiffs and class members are entitled to a judgment ordering Defendants to assess the value of any assessments actually due and owed by Declarant to the Association on any proper assessments the executive board and/or Association failed to collect from Defendants, such sum being in excess of $5,000,000.00.

232.   Plaintiffs have incurred, and will continue to incur, expenses and attorney's fees in enforcing their rights and are entitled to an award of these expenses.

**WHEREFORE**, Plaintiffs pray this Court enter an order certifying this case as a class action pursuant to Rule 23, enter its judgment against Defendants and award the relief herein requested including damages, attorney's fees and expenses and such other relief as the Court deems just and proper.

## COUNT IX – BREACH OF CONTRACT

233.   Plaintiffs incorporate and reallege the preceding paragraphs as if set out fully herein.

234.   Plaintiffs bring this claim against the Association, TRR, LLC, TRR Timeshares, LLC, TRR Management, LLC, Kimberly Steed, the Estate of Frank "Jay" Joseph Steed, Julie Rogers, Dean Johnson.

235.   RSMo. § 448.1-113 creates a contractual obligation on behalf of the Declarant Defendants and/or Association including an obligation of good faith and fair dealing in the performance and enforcement of the obligations and requirements of the Declarations and UCA.

236.   By accepting the control over the Resort, Defendants agreed to be bound by the duties and obligations imposed by the Declarations and the UCA.

237.   Such acceptance by Defendants created a contractual obligation it owed to Plaintiffs and class members.

238.   Defendants have breached their contractual obligations as set out herein.

239.   As a direct result of such breaches, Plaintiffs and class members have been damaged.

240.   Plaintiffs and class members are entitled to disgorgement of any profits received by Defendants for their unlawful business activities on the resort.

241.   Plaintiffs and class members are entitled to a money judgment against Defendants in an amount equal to the value of the assessments they paid since 2013, such sum being in excess of $5,000,000.00.

242.   Plaintiffs and class members are entitled to a judgment ordering Defendants to pay the value of any assessments actually due and owed by them on any proper assessments the

executive board and/or Association failed to collect from Defendants, such sum being in excess of $5,000,000.00.

243.     Plaintiffs have incurred, and will continue to incur, expenses and attorney's fees in enforcing their rights and are entitled to an award of these expenses.

**WHEREFORE**, Plaintiffs pray this Court enter an order certifying this case as a class action pursuant to Rule 23, enter its judgment against Defendants and award the relief herein requested including damages, attorney's fees and expenses and such other relief as the Court deems just and proper.

## <u>COUNT X – QUIET TITLE</u>

244.     Plaintiffs incorporate and reallege the preceding paragraphs as if set out fully herein.

245.     The Declarations and the UCA vest title to common elements of the Resort, that is, all property of the Resort not a unit, in the unit week owners.

246.     Defendant TRR, LLC and/or TRR Management, LLC and/or TRR Timeshares, LLC and/or their members, officers, agents and employees have held themselves out as the owner(s) of the common elements of the property.

247.     Said Defendants have, since 2013, continuously occupied the common elements of the Resort and improperly asserted their control over said common elements of the Resort.

248.     The right to possession of said property are the unit week owners in the Resort and/or the Association.

249.     Defendants did not receive title to the common elements of the Resort by way of any assignment of Declarant interest in the Resort and therefore, have no valid right to possess said property.

250.     Defendants were well aware of the Plaintiffs', unit week owners' and Association's right to possess and control the common elements, but continued to possess said property, exercise control over said property, and generate profits and income through its unauthorized business activities upon said property.

251.     Plaintiffs, class members and/or the Association's right to legal and equitable title in the property is superior to that of Defendants.

**WHEREFORE**, Plaintiffs pray this Court enter an order certifying this case as a class action pursuant to Rule 23, enter its judgment against Defendants quieting legal and equitable title in the Resort and its common elements in Plaintiffs, class members and/or the Association as their interest may appear and award the relief herein requested including possession of the property, damages, attorney's fees and expenses and such other relief as the Court deems just and proper.

## COUNT XI – EJECTMENT

252.     Plaintiffs incorporate and reallege the preceding paragraphs as if set out fully herein.

253.     The Declarations and the UCA vest title to common elements of the Resort, that is, all property of the Resort not a unit, in the unit week owners.

254.     Defendant TRR, LLC and/or TRR Management, LLC and/or TRR Timeshares, LLC and/or their members, officers, agents and employees have held themselves out as the owner(s) of the common elements of the property.

255.     Said Defendants have, since 2013, continuously occupied the common elements of the Resort and improperly asserted their control over said common elements of the Resort.

256.     The right to possession of said property are the unit week owners in the Resort and/or the Association.

257.     Defendants did not receive title to the common elements of the Resort by way of any assignment of Declarant interest in the Resort and therefore, have no valid right to possess said property.

258.     Defendants were well aware of the Plaintiffs, unit week owners, and Association's right to possess and control the common elements, but continued to possess said property, exercise control over said property, and generate profits and income through its unauthorized business activities upon said property.

259.     As a direct result of Defendants' unlawful possession of the property, Plaintiffs and class members and the Association have been damaged.

260.     Plaintiffs and class members are entitled to the fair market rental value of the property.

261.     Plaintiffs and class members are entitled to profits Defendants generated by their use of the property.

262.     Plaintiffs and class members are entitled to ejectment of Defendants from the property.

263.     Plaintiffs and class members are entitled to possession of the property from Defendants.

**WHEREFORE**, Plaintiffs pray this Court enter an order certifying this case as a class action pursuant to Rule 23, enter its judgment against Defendants and award the relief herein requested including possession of the property, damages, attorney's fees and expenses and such other relief as the Court deems just and proper.

## COUNT XII – TRESPASS

264.     Plaintiffs incorporate and reallege the preceding paragraphs as if set out fully herein.

265.     Plaintiffs bring this claim against TRR, LLC, TRR Timeshares, LLC, TRR Management, LLC, Kimberly Steed, the Estate of Frank "Jay" Joseph Steed, Julie Rogers, Dean Johnson.

266.     Plaintiffs and class members are vested with undivided interests in fee simple to their unit weeks in the Resort.

267.     Included with their interests is the right to use and/or access the common elements of the Resort, which the UCA defines as "all portions of a condominium other than the units[.]" *See* RSMo. § 448.1-10(4).

268.     Defendants have continued to exercise special declarant rights to maintain sales and marketing offices and conduct related activities in and around the common elements, including the unit weeks owned by unit owners.

269.     Defendants have continued to exercise control and hold itself/themselves out as the owners of said property.

270.     Such use has included, but has not been limited to:

   a.   Renting out unit weeks owned by unit week owners without their permission and retaining the profits from such sales;

   b.   Allowing RCI representatives onto the property for the purpose of converting the Resort into a RCI points schemed Resort and to sale RCI accepted points;

   c.   Renting out unit weeks owned by Defendants without paying their corresponding assessment obligations;

d.   Conducting business exclusively for the benefit of Defendants in the common elements and generating profits therefrom.

271.   As a direct and proximate result of Defendants' actions described above, Plaintiffs and the class have been damaged.

272.   Plaintiffs and class members are entitled to disgorgement of any profits received by Defendants for their unlawful business activities on the resort.

273.   Plaintiffs and class members are entitled to the fair market rental value from Defendants for their unauthorized use of the Resort, such sum being in excess of $5,000,000.00.

274.   Plaintiffs and class members are entitled to a judgment ordering Defendants to pay the value of any assessments actually due and owed by them to the Association on any proper assessments the executive board and/or Association failed to collect from Defendants, such sum being in excess of $5,000,000.00.

275.   Plaintiffs have incurred, and will continue to incur, expenses and attorney's fees in enforcing their rights and are entitled to an award of these expenses.

**WHEREFORE**, Plaintiffs pray this Court enter an order certifying this case as a class action pursuant to Rule 23, enter its judgment against Defendants and award the relief herein requested including damages, attorney's fees and expenses and such other relief as the Court deems just and proper.

## <u>COUNT XIII – FRAUD</u>

276.   Plaintiffs incorporate the preceding paragraphs as if set out fully herein.

277.   Plaintiffs bring this claim against TRR, LLC, TRR Timeshares, LLC, TRR Management, LLC, Kimberly Steed, the Estate of Frank "Jay" Joseph Steed, Julie Rogers, Dean Johnson.

278.     Defendants represented to Plaintiffs and the class that they had the authority to and did assess general and special assessments owed by unit owners.

279.     As set out above, such representations were false as Defendants did not have the authority to make said assessments.

280.     Such representations were material.

281.     Defendants knew the representations were false or were ignorant of the truth of whether they had the authority to make such assessments and/or whether they properly calculated said assessments.

282.     Defendants intended that Plaintiffs and class members rely on such false representations.

283.     Plaintiffs and class members were ignorant of the falsity of Defendants' representations.

284.     Plaintiffs and class members relied on the Defendants' representations.

285.     Plaintiffs and class members had a right to rely on Defendants' representations.

286.     As a direct result of such representations, Plaintiffs and class members were damaged in that they paid general and special assessments that were unlawfully and improperly assessed against them.

287.     Plaintiffs and class members are entitled to their damages, that is any amounts they paid to Defendants from 2013 to present.

288.     Plaintiffs have incurred, and will continue to incur, expenses and attorney's fees in enforcing their rights and are entitled to an award of these expenses.

**WHEREFORE**, Plaintiffs pray this Court enter an order certifying this case as a class action pursuant to Rule 23, enter its judgment against Defendants and award the relief herein

requested including damages, attorney's fees and expenses and such other relief as the Court deems just and proper.

## <u>COUNT XIV – UNJUST ENRICHMENT</u>

289.     Plaintiffs incorporate the preceding paragraphs as if set out fully herein.

290.     Plaintiffs bring this claim against TRR, LLC, TRR Timeshares, LLC, TRR Management, LLC, Kimberly Steed, the Estate of Frank "Jay" Joseph Steed, Julie Rogers, Dean Johnson.

291.     Defendants received a benefit in the following ways:

   a.   Use of the Resort to generate profits;

   b.   Use of unit weeks without paying assessments;

   c.   Receipt of assessments paid by Plaintiffs and class members.

292.     For the reasons set out above, Defendants' receipt of just benefits was unjust.

293.     As a direct and proximate result of Defendants' actions described above, Plaintiffs and the class have been damaged.

294.     Plaintiffs and class members are entitled to disgorgement of any profits received by Defendants for their unlawful business activities on the resort.

295.     Plaintiffs and class members are entitled to a money judgment against Defendants in an amount equal to the value of the assessments they paid since 2013, such sum being in excess of $5,000,000.00.

296.     Plaintiffs and class members are entitled to a judgment ordering Defendants to pay the value of any assessments actually due and owed by them on any proper assessments the executive board and/or Association failed to collect from Defendants, such sum being in excess of $5,000,000.00.

**WHEREFORE**, Plaintiffs pray this Court enter an order certifying this case as a class action pursuant to Rule 23, enter its judgment against Defendants and award the relief herein requested including damages, attorney's fees and expenses and such other relief as the Court deems just and proper.

## COUNT XV – MONEY HAD AND RECEIVED

297.    Plaintiffs incorporate the preceding paragraphs as if set out fully herein.

298.    Plaintiffs bring this claim against TRR, LLC, TRR Timeshares, LLC, TRR Management, LLC, Kimberly Steed, the Estate of Frank "Jay" Joseph Steed, Julie Rogers, Dean Johnson.

299.    Plaintiffs and class members paid money to Defendants in the form of general and special assessments.

300.    The payment of such sums was unjust in that Defendants failed to properly assess such assessments as set out above.

301.    Defendants' retention of such funds is unjust and the Court should order Defendants to pay back such sums to Plaintiffs and class members.

**WHEREFORE**, Plaintiffs pray this Court enter an order certifying this case as a class action pursuant to Rule 23, enter its judgment against Defendants and award the relief herein requested including damages, attorney's fees and expenses and such other relief as the Court deems just and proper.

## COUNT XVI – FAILURE TO FURNISH REQUESTED DOCUMENTS

302.    Plaintiffs incorporate and reallege the preceding paragraphs as if set out fully herein.

303.    Plaintiffs Martin Porter and Linda Porter caused a request to be mailed to the Association's attorney in April of 2022 requesting they be provided a copy of the roster of all names and addresses of the unit owners.

304.    Section 6.02(b) of the Declarations requires the Association to provide said roster upon request.

305.    Defendant has failed and refused to provide the requested information.

306.    The UCA authorizes this court to enter any appropriate orders necessary to enforce its terms and/or the terms of the Declaration.

307.    Plaintiffs have incurred expenses and attorney's fees to enforce their right to receive the roster information and are therefore entitled to an award of same.

`    **WHEREFORE,** Plaintiffs Porter pray this Court enter its judgment against Defendant Association ordering it to provide the roster of all current unit owners and their addresses and award the relief herein requested including damages, attorney's fees and expenses and such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

**WHEREFORE**, Plaintiffs demand jury trial on all issues so triable.

## VERIFICATION OF LINDA PORTER

I hereby certify under penalty of perjury that the foregoing factual statements in this Complaint are true and correct to the best of my knowledge.

Date: *Linda Porter*    6/29/22
Linda Porter

## VERIFICATION OF MARK BROWNSBERGER

I hereby certify under penalty of perjury that the foregoing factual statements in this Complaint concerning the Estate of Allyene Brownsberger and its interests are true and correct to the best of my knowledge.

Date: 6-29-22

Mark Brownsberger
Mark Brownsberger

**DOUGLAS, HAUN & HEIDEMANN, P.C.**
901 E. St. Louis St., Suite 1200
Springfield MO 65806
Telephone: (417) 887-4949
Fax: (417) 887-8618
craig@dhhlawfirm.com
donald@dhhlawfirm.com
nick@dhhlawfirm.com

/s/ Nickolas W. Allen

By _____
     Craig R. Heidemann
     Missouri Bar No. 42778
     Donald M. Brown
     Missouri Bar No. 57652
     Nickolas W. Allen
     Missouri Bar No. 69582
     Attorneys for Plaintiffs

DHH No. 1749-022